O

# United States District Court
# Central District of California

| | |
|---|---|
| STEPHANIE LA GROW,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JETBLUE AIRWAYS CORPORATION and DOES 1 through 50, inclusive,<br><br>　　　　　　Defendants. | Case № 2:24-cv-00518-ODW (SKx)<br><br>**ORDER DENYING MOTION TO REMAND [17]** |

## I.　　INTRODUCTION

On November 27, 2023, Plaintiff Stephanie La Grow filed this putative Class Action Complaint in the Superior Court of the State of California, County of Los Angeles, against her employer, JetBlue Airways Corporation.  (Notice of Removal ("NOR") Ex. A ("Compl."), ECF No. 1-1.)  On January 19, 2023, JetBlue removed the instant action on the basis that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, and the separate, independent, and alternative ground for removal under 28 U.S.C. § 1332(a).  (NOR 1.) La Grow now moves to remand this action for lack of subject matter jurisdiction.

(Mot. Remand ("Motion" or "Mot."), ECF No. 17.) For the reasons below, the Court **DENIES** La Grow's Motion.[1]

## II. BACKGROUND

La Grow, a JetBlue employee in California, brings this class action on behalf of other current and former California JetBlue employees to fully compensate class members for losses allegedly incurred due to JetBlue's "policy and practice" of failing to lawfully compensate these employees. (Compl. ¶ 5.) La Grow alleges that Defendant failed to fully pay employees for all time worked, pay overtime and meal and rest break premiums, include incentive compensation per JetBlue's non-discretionary incentive program, provide all required meal and rest breaks, accurately record and pay employees for the actual amount of time worked, provide complete and accurate wage statements, pay all waiting time penalties, pay all sick pay wages, reimburse and indemnify employees for required business expenses, or provide suitable seating. (*See id.* ¶¶ 8–27.)

La Grow brings eight claims stemming from JetBlue's alleged violations of the California Labor Code: (1) violation of the Unfair Competition Law; (2) failure to pay all state minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal periods and pay meal period premiums; (5) failure to provide rest periods and pay rest period premiums; (6) failure to provide accurate itemized wage statements; (7) failure to reimburse required business expenses; and (8) failure to pay sick pay wages. (*See* Compl. ¶¶ 49–114.) For the first cause of action, La Grow seeks to represent all current and former non-exempt employees of JetBlue, including any employees staffed with Defendant by a third party (the "California Class"), whom JetBlue employed in California at any time "during the period beginning four (4) years prior" to the filing of the Complaint (the "California Class Period").[2] (*Id.*

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The "California Class Period" therefore begins on November 27, 2019, four years prior to La Grow's filing of this action.

¶ 30.) For the Second through Eighth causes of action, La Grow seeks to represent all members of the California Class "at any time during the period three (3) years prior to the filing of the complaint" (the "California Labor Sub-Class Period").[3] (*Id.* ¶ 40.)

On January 19, 2023, JetBlue removed the action to federal court based on alleged CAFA subject matter jurisdiction and the separate, independent, and alternative ground for removal under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (NOR ¶¶ 10, 62.) Now, La Grow moves to remand the action back to state court on the basis that the aggregate amount in controversy does not meet CAFA's $5,000,000 jurisdictional threshold or § 1332(a)'s $75,000 threshold. (*See generally* Mot.) The Motion is fully briefed. (Opp'n, ECF No. 18; Reply, ECF No. 19.)

### III.   LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a party may remove a civil action brought in a state court to a district court only if the plaintiff could have originally filed the action in federal court. Federal district courts have original jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship (i.e., diversity is "complete"), and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

There is a strong presumption that a court is without jurisdiction until affirmatively proven otherwise. *See Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). When an action is removed from state court, the removing party bears the burden of demonstrating that removal is proper. *Gaus*,

---

[3] The "California Labor Sub-Class Period" therefore begins on November 27, 2020, three years prior to La Grow's filing of this action.

980 F.2d at 566. Thus, removal jurisdiction is strictly construed, and any doubt as to the propriety of removal is to be resolved in favor of remand. *Id.*

CAFA provides federal courts with jurisdiction over a purported class action if all of the following requirements are met: (1) the amount in controversy exceeds $5 million, (2) at least one putative class member is a citizen of a state different from any defendant, and (3) the putative class exceeds 100 members. 28 U.S.C. §§ 1332(d)(2)(5). The removing defendant bears the burden of establishing federal jurisdiction, "including any applicable amount in controversy requirement." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006) (quoting *Gaus*, 980 F.2d at 566). However, unlike cases removed under diversity jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," when the allegation is challenged, "[e]vidence establishing the amount is required." *Id.* "[B]oth sides submit proof," and the court decides whether the defendant has demonstrated, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied. *Id.* at 88. Such evidence may include "affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Whether the defendant meets its burden of demonstrating the amount in controversy is "to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "[M]ere speculation and conjecture, with unreasonable assumptions" does not suffice. *Id.* at 1197.

## IV. DISCUSSION

This jurisdictional inquiry concerns whether the amount in controversy exceeds $5,000,000, as required by CAFA, or, in the alternative, $75,000 as required by 28 U.S.C. § 1332(d)(2)(A). The amount in controversy is simply "the amount at stake in the underlying litigation." *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 994 (9th Cir. 2022) (quoting *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). It "does not mean likely or probable liability; rather, it refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (noting that the amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation" (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008))).

La Grow challenges JetBlue's amount in controversy calculations on both removal bases, so the Court first addresses CAFA before turning to diversity jurisdiction under § 1332(a).

### A. CAFA

The parties do not dispute the minimum diversity or numerosity elements of CAFA. Accordingly, the only issue is whether JetBlue has shown, by a preponderance of the evidence, that the amount in controversy exceeds CAFA's $5,000,000 jurisdictional threshold.

In its Opposition, JetBlue calculates an amount in controversy of $11,144,606.50. (Opp'n 7.) La Grow does not allege a specific amount of damages in the Complaint, but states that the aggregate damages for Class claims is below CAFA's $5,000,000 threshold required for federal jurisdiction. (Compl. ¶ 4.) In arguing for remand, La Grow asserts that JetBlue: (1) uses unreasonable violation rates for each of her claims, and (2) fails to support its calculations with summary-judgment-type evidence. (*See generally* Mot.; Reply to Opp'n.) She contends that, as a consequence, JetBlue does not meet its burden of proof that the amount in

controversy exceeds $5,000,000. The Court first addresses the reasonableness of JetBlue's violation rates in determining the amount in controversy, then addresses whether JetBlue's calculations are supported by sufficient and competent evidence.

### 1. *Violation Rate*

To determine whether an action meets CAFA's amount in controversy threshold, "courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. In assessing the amount in controversy, a removing defendant is permitted to rely on "a chain of reasoning that includes assumptions." *Id.* at 1199. Such "assumptions cannot be pulled from thin air but need some reasonable ground underlying them," founded on the allegations in the complaint. *Id.* at 1198–99.

To examine the reasonableness of an assumed violation rate, "the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). If a complaint alleges "uniform" practice of violation and offers "no competent evidence in rebuttal to the defendant's showing," then courts have found the defendant's assumption of 100% violation rate to be reasonable." *See id.* Conversely, plaintiff's allegations of a "pattern and practice" of violating the Labor Code "does not necessarily mean *always*" violating the Labor Code, so the removing party "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions," that were founded in the complaint. *Ibarra*, 775 F.3d at 1198–99. (emphasis in original).

Throughout the Complaint, La Grow consistently alleges that JetBlue maintained a "policy and practice" of violating the Labor Code. (*See generally* Compl.) La Grow attempts to qualify the pattern and practice allegations by using language such as "from time to time" and "periodically" to describe the frequency of Defendant's violations. (*Id.*) However, she does not explain how the language "from time to time" limits the scope of her allegations, how it means something different

from "pattern and practice," or why this limiting language results in a lower violation rate than "pattern and practice" allegations. Therefore, the Court considers JetBlue's violation rates under a pattern and practice analysis, and La Grow's "from time to time" language does not disturb the Court's determination of reasonableness.

### a. Meal Period and Rest Break Claims

JetBlue applies a 25% violation rate to calculate the amount in controversy for La Grow's missed meal period and missed rest break claim, placing $1,246,110.40 and $1,453,709.00 in controversy, respectively. (Mot 8–13; Opp'n 7.) La Grow contends that the Complaint's language does not support a 25% violation rate, and points to allegations that, as a matter of "policy and practice," JetBlue failed to provide her and other class members with compliant meal and rest breaks. (Mot. 10–12; Compl., ¶¶ 11–12, 27, 33, 35(b), 36(c), 54, 56, 93–100.)

For these types of "policy and practice" allegations, courts in the Ninth Circuit, including this Court, have found a 25% violation rate or higher to be reasonable as applied to meal and rest break claims. *See Elizarraz v. United Rentals, Inc.*, No. 2:18-cv-09533-ODW (JCx), 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019) (finding it "entirely reasonable for [the d]efendant to allege a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods" based on "pattern and practice" language in the complaint); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate for the meal period claim and a 30% violation rate for the rest period claim proper where the complaint alleged that the defendant had a "policy and practice" of meal and rest period violations with no further guidance on violation frequency); *Oda v. Gucci Am., Inc.*, No. 2:14-cv-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods, and that not all rest periods were timely given).

Here, La Grow's pattern and practice allegations support the assumption that each class member suffered a meal and rest break violation for every four shifts worked, based on what this Court and other courts in the Ninth District have found reasonable. Therefore, the Court finds JetBlue's 25% violation rate as to the missed meal break and missed rest period claims reasonable.

### b. Unpaid Wages Claim

Next, JetBlue applies a 25% violation rate to calculate the amount in controversy for La Grow's minimum wage claim, placing $352,845.00 in controversy. (NOR ¶¶ 30–33; Opp'n 7.) La Grow contests JetBlue's assumed violation rate as "unsupported and unreasonable." (Mot. 13.) Examples of unpaid work that La Grow provides include working during meal breaks, rounding employee time, and undergoing pre-shift COVID-19 screenings. (Compl. ¶ 8). In supporting her minimum wage claim, La Grow alleges that JetBlue maintained a "policy and practice" of "intentionally, oppressively, and maliciously" not paying putative class members for all time worked. (Compl. ¶¶ 8, 69, 76).

District courts in the Ninth Circuit have rejected a 100% violation rate for "pattern and practice" allegations for an unpaid wages claim, but found a 25% violation rate to be a "reasonable alternative assumption." *See Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25, 2022). In fact, 25% is at the lower end of the violation rates that courts in this circuit have found reasonable for unpaid wages claims. *See id.*; *Alvarez v. Off. Depot, Inc.*, No. 2:17-cv-07220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (60% violation rate); *Brown v. Janus of Santa Cruz*, No. 21-CV-00094-BLF, 2021 WL 3413349, at *6–7 (N.D. Cal. Aug. 5, 2021) (25% violation rate); *Trigueros v. Stanford Fed. Credit Union*, No. 21-CV-01079-BLF, 2021 WL 2649241, at *4 (N.D. Cal. Jun. 28, 2021) (20% violation rate).

Here, La Grow's allegation that JetBlue had a consistent "policy and practice" of intentionally failing to pay the class members for all time worked supports an

assumed 25% violation rate. This rate aligns with what Ninth Circuit courts have deemed acceptable, therefore making JetBlue's assumed 25% violation rate reasonable for La Grow's unpaid wages claim.

### c. Waiting Time Claim

For La Grow's waiting time claim, JetBlue applies an assumed 100% violation rate and the maximum 30-day recovery period for penalties, placing $1,289,970.80 in controversy. (Opp'n 7, 13–14.) Labor Code Section 203 provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the employee waits for their late wages, i.e. "waiting time," up to a maximum of 30-days. Cal. Lab. Code § 202. La Grow alleges that, "[a]s a pattern and practice, D[efendant] regularly failed to pay P[laintiff] and other members of the C[alifornia] C[lass] their correct wages and accordingly owe waiting time penalties." (Compl. ¶ 20). In response, JetBlue reasoned that "Plaintiff's allegations reasonably support the assumption that every putative class member was underpaid wages *at least once* during their employment," whether that be in the form of "minimum wages, overtime pay, meal/rest break premiums, sick pay, etc," and are therefore "owed the maximum waiting times." (Opp'n 13–14; Reply 7.)

Courts in the Ninth Circuit have found both a 100% assumed violation rate and using the maximum 30-day recovery period for waiting time penalties to be reasonable. *See Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB (JPRx), 2022 WL 5241838, at *3–4 (C.D. Cal. Oct. 6, 2022) (finding defendant's assumption that "each putative class member would be owed waiting time penalties" and "the maximum [30-day] statutory penalty" to be reasonable); *Marquez v. Southwire Co., LLC*, No. 5:21-cv-00252-JGB (SPx), 2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021) ("If [d]efendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations.").

Here, although a 100% violation rate is high, JetBlue's assumed violation rate aligns with what courts in the Ninth Circuit have deemed to be reasonable for similar "pattern and practice" allegations. Therefore, the Court finds that JetBlue's use of a 100% violation rate and the maximum 30-day recovery period is reasonable to calculate the amount in controversy for La Grow's waiting time claim.

### d. Wage Statement and Untimely Payment of Wages Claims

Next, JetBlue assumed a 100% violation rate for La Grow's wage statement and untimely payment of wages claim to argue $1,960,550.00 and $2,612,500.00 in controversy, respectively. (Opp'n 15–17.)

Labor Code Section 226(a) provides that any time wages are due to employees, employers must report those wages accurately on wage statements, and employers who fail to provide employees with "an accurate itemized [wage] statement" are subject to fines. Cal. Lab. Code § 226; *see Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 121 (2022). Additionally, under Labor Code Section 204(d), employers must pay all wages due within seven days of the close of the payroll period. Cal. Lab. Code § 204; (Compl. ¶ 15–16).

JetBlue assumes a violation of Sections 204 and 206 "each weekly pay period in which a putative class member performed work." (Opp'n 16.) La Grow alleges JetBlue "failed to provide [the California Class members] with complete and accurate wage statements" and its "policy and practice was to unlawfully and intentionally deny timely payment of wages due." La Grow contends that, because she does not allege that all putative class members suffered wage statement violations or untimely wage payments every period, JetBlue's assumptions are unsupported and unreasonable. (Compl. ¶ 14, 69; Mot. 13–14.)

Courts in the Central District are split on whether an assumed 100% violation rate for wage statement and untimely payment of wages is reasonable. *Compare Jones v. JW Marriott Anaheim Resort*, No. 8:21-cv-00703-DOC (DFMx), 2021 WL 2473702, at *3–4 (C.D. Cal. June 17, 2021) (finding Defendant's "extreme

assumption" of a 100% violation rate for the wage statement claim unreasonable given Plaintiff's "pattern and practice" violation allegations), *with Lucas v. Michael Kors (USA) Inc.*, No. 2:18-cv-01608-MWF (MRWx), 2018 WL 2146403, at *8–9 (C.D. Cal. May 9, 2018) (holding that if the Court assumes Defendants had a "consistent policy" of failing to provide meal/rest breaks, then the provided wage statements would necessarily have been inaccurate 100% of the time); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 5:19-cv-00839-DOC (SPx), 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (holding that Defendants "fairly infer[red] a 100% violation rate" from allegations that they "intentionally and willfully failed" to timely pay wages [and] provide accurate wage statements).

Here, as the Court finds a 25% violation rate to be a reasonable assumption rate for La Grow's meal and rest break claims (assuming a violation one out of every four shifts worked by the putative class members), this Court agrees with the court in *Lucas* that it is likely that the wage statements JetBlue provided would necessarily be inaccurate 100% of the time. 2018 WL 2146403, at *25–26. Like the plaintiff's complaint in *Lucas*, which alleged a consistent policy of wage statement violations, *id.*, La Grow alleges a "policy and practice" of violations, therefore making it reasonable to conclude that each wage statement would have failed to include compensation for the missed meal/rest break. (Compl. ¶ 69.) This applies equally to La Grow's failure to pay timely wages claim, as it is reasonable to assume that if JetBlue had a policy and practice of failing to pay class members for all time worked, it also consistently failed to pay wages on time.

Therefore, the Court finds JetBlue's 100% violation rate reasonable to calculate the amount in controversy for La Grow's wage statement and untimely payment of wages claims.

e. Total Amount in Controversy

Aggregating each of the above, while omitting attorneys' fees,[4] we add together $1,246,110.40 in meal break premiums, $1,453,709.00 in rest break premiums, $352,845.00 in minimum wages, $1,289,970.80 in waiting time penalties, $1,960,550.00 in wage statement penalties, and $2,612,500.00 in untimely wage payments, for a reasonable estimate of the amount in controversy of $8,915,685.20. Therefore, JetBlue satisfies CAFA's $5,000,000 threshold.

2.  Evidence

Next, La Grow contends that JetBlue fails to provide sufficient competent evidence to support its assertion that the amount in controversy exceeds $5 million. (*See generally* Mot.)

To satisfy removal jurisdiction under CAFA, the defendant must establish the amount in controversy by a preponderance of evidence when the asserted amount in controversy is contested by the plaintiff. *Dart Cherokee*, 574 U.S. at 88–89. To meet this burden and support the amount in controversy, parties may submit evidence outside the complaint, including affidavits, declarations, or other summary-judgment-type evidence. *Ibarra,* 775 F.3d. at 1197. The Ninth Circuit has stated that evidence can be "direct or circumstantial," and while the assumptions may not be merely speculative, an amount in controversy assessment may require "a chain of reasoning that includes assumptions." *Id.* at 1197, 1199.

Here, JetBlue supports its amount in controversy calculation with the declaration of Sylvia Espanola, its Director of Compensation. (Opp'n 7; Decl. Sylvia Espanola ISO Opp'n ("Espanola Decl."), ECF No. 18-1.) In her role as Director of Compensation, Espanola has "access to personnel, timekeeping, and payroll records and related information and data for JetBlue employees, including employees in California, that have been created and maintained in the normal course of JetBlue's

---

[4] Since the Court finds JetBlue exceeded CAFA's requisite amount in controversy based on the calculations discussed above, it declines to consider JetBlue's argument for the addition of attorneys' fees.

business." (*Id.* ¶ 2.) Espanola states that she accessed, reviewed, and analyzed personnel, compensation, timekeeping, and payroll data pertaining to the putative class members for this case. (*Id.* ¶¶ 2–5.) Relying on this data, Espanola calculated the number of putative class members, the number of workweeks, the number of various shift lengths, and the putative class members' hourly wage. (*Id.*) JetBlue uses the employee data provided in Espanola's report to perform its amount in controversy calculations. (Opp'n 6–7.)

The Court finds Espanola's analysis credible due to her access to employee information and her position at JetBlue. Accordingly, the Court deems the evidence she provides to be competent and sufficient to support JetBlue's amount in controversy calculations in the context of threshold CAFA determinations. *See Lewis*, 627 F.3d at 397 (holding that a declaration or affidavit may satisfy the burden of proving the amount in controversy by a preponderance of the evidence).

As such, because the Court finds JetBlue's violation rate assumptions reasonable and its calculations grounded in real evidence, JetBlue has met their burden and shown that La Grow's claims, in the aggregate, place more than CAFA's $5 million threshold in controversy. Accordingly, the Court has subject matter jurisdiction to hear this case.

**B.    Original Diversity Jurisdiction**

As the requirements of CAFA are met, there is no need to consider the requirements of diversity jurisdiction separately. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1036 (9th Cir. 2020) (holding that "CAFA expressly extends original federal jurisdiction to state-law claims" and if established, a court does not need to find an alternative ground for federal jurisdiction.) Therefore, this Court has federal subject matter jurisdiction under CAFA, and there is no need to analyze whether removal is also proper under diversity jurisdiction.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 17.)

**IT IS SO ORDERED.**

July 3, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**